IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICHARD GREENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1204-KAJ |
| | ) | |
| HON. GORDON R. ENGLAND, Secretary of the Navy, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

---

Thomas V. McDonough, Delaware Volunteer Legal Services, 4601 Concord Pike, P.O. Box 7306, Wilmington, Delaware 19802; Counsel for Plaintiff.

Douglas Edward McCann, U.S. Attorney's Office, The Nemours Building, 1007 Orange Street, Suite 700, P.O. Box 2046, Wilmington, Delaware 19899-2046; Counsel for Defendant.

---

October 6, 2005
Wilmington, Delaware

JORDAN, District Judge

## I. INTRODUCTION

Before me is a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted (Docket Item ["D.I."] 15), and a motion for summary judgment (D.I. 16), both filed by defendant Gordon R. England, as Secretary of the Navy ("the Secretary").[1]  Also before me is a cross-motion for summary judgment (D.I. 20) filed by plaintiff Richard Greenberg ("Greenberg").  The Complaint by Greenberg alleges that the Secretary and the Board for Correction of Naval Records ("BCNR") acted arbitrarily and capriciously when they refused to upgrade his discharge from the Navy from Other Than Honorable to Honorable.  (D.I. 1 at ¶ 51.)  Greenberg also claims that he is entitled to relief under the Privacy Act, 5 U.S.C. § 552a(d), as the failure of BCNR to correct his records has caused him to be denied various benefits to which he would otherwise be entitled.  (D.I. 1 at ¶ 61.)

Jurisdiction is appropriate under 28 U.S.C. § 1331 and 5 U.S.C. § 552a(d).  For the reasons that follow, I will grant the Secretary's motions for summary judgment (D.I. 15 and 16), and deny Greenberg's motion for summary judgment (D.I. 20).

---

[1] The Secretary's Motion to Dismiss (D.I. 15) will be treated here as a motion for summary judgment, as the Secretary submitted various evidence, including affidavits and Greenberg's military records, on which I am asked to rely in deciding this motion. *See Hughes v. U.S.*, 263 F.3d 272, 278 (3d Cir. 2001) ("[a]lthough the District Court purported to resolve the motion under § 12(b)(1), it considered memoranda, affidavits and exhibits submitted by both parties. The court, therefore, should have applied summary judgment standards in deciding whether to grant or deny the Government's motion.")

## II. BACKGROUND[2]

    A.    <u>Greenberg's Administrative Discharge</u>

Richard Greenberg enlisted in the Navy on June 26, 1978. (D.I. 1, Exhibit A at 8.) He completed boot camp and Mess Management School, and was then assigned to the Naval Installation at Roosevelt Roads, Puerto Rico. (D.I. 1, Attachment 3 at ¶¶ 3-4; D.I. 1, Exhibit A at 23, 47.) Until mid-1980, Greenberg's performance record was good, and he was frocked to MS3 on June 27, 1980.[3] (D.I. 1, Exhibit A at 26.)

In September of 1980, Greenberg sold 285 grams of marijuana to another sailor. (D.I. 18 at 17.) On October 14 of that year, Greenberg appeared before a Special Court-Martial, and was charged with possessing, selling, and transferring marijuana aboard a military installation. (*Id.* at 123.) Greenberg pled guilty, and was sentenced to two months of restriction to quarters, a reduction in pay grade, forfeiture of $200 per month for two months, and two months of hard labor without confinement. (*Id.*) He began serving the restriction and hard labor portions of his sentences in January of 1981. (*Id.*) While serving his sentence, Greenberg violated Article 134 of the Uniform Code of Military Justice by communicating a threat, and received an additional fifteen days of hard labor, forfeiture of $50 a month for one month, and another reduction in pay grade. (*Id.* at 124.)

---

[2] The following information is drawn from the parties' submissions and is viewed in the light most favorable to the plaintiff.

[3] Being frocked to a higher pay grade allowed Greenberg to "wear the uniform and insignia of a higher grade without entitlement or allowances of" that higher pay grade. (D.I. 1, Exhibit A at 23.) This is an administrative authorization only. (*Id.*)

During his court martial sentence, Greenberg began to experience problems with his mental health. His pre-existing depression[4] returned. (D.I. 1 at ¶¶ 22, 24-25.) Additionally, starting in mid-1980, Greenberg was experiencing trouble in his marriage, and he and his wife were receiving counseling. (D.I. 1 at ¶ 16.) Greenberg's mental illness worsened, causing him to be admitted to the Neuropsychiatric Ward at Roosevelt Roads Naval Hospital on January 9, 1981. (D.I. 1, Exhibit A at 120-21.) On March 2, 1981, a medical board found that his mental illness precluded further military service. (D.I. 18 at 195-97.)

At the same time Greenberg was experiencing problems with his mental health, he was being considered for administrative discharge based on his conduct. He was notified on March 25, 1981 by the Commanding Officer at his naval station that he was being considered "for Discharge under Other than Honorable Conditions/ Misconduct (Drug Abuse)" based on the actions that led to his court martial. (D.I. 18 at 18.)

Here, the facts are somewhat disputed. The Secretary claims that Greenberg was advised of his rights, consulted with military counsel, and waived his right to an Administrative Discharge Board ("ADB"). (D.I. 18 at 18). However, Greenberg claims that he was never advised of his rights, and never signed a waiver of his right to appear before an ADB. (D.I. 1 at ¶ 35.) While there is a notation in a summary of Greenberg's service record that he signed a waiver, there is no actual waiver in Greenberg's military

---

[4] Greenberg has a history of mental illness, having been hospitalized for depression prior to his enlistment in the Navy. (D.I. 18 at 129.)

records. (D.I. 18 at 18.) Greenberg was discharged from the Navy on September 11, 1981, based on his misconduct, under Other Than Honorable conditions. (*Id.* at 74.)

      B.      <u>Initial Efforts to Upgrade the Discharge</u>

On January 10, 1983, Greenberg asked the Navy Discharge Review Board ("NDRB") to upgrade his discharge from Other Than Honorable, asserting that his mental and physical condition at the time of his discharge and remorse for his conduct warranted upgrade. (D.I. 18 at 61-67). Greenberg did not argue that he had not waived his right to an ADB. (*Id.*) During this request, Greenberg was represented by a lay counselor from AmVets. (*Id.* at 19.) The NRDB conducted a documentary review of Greenberg's records, and determined that Greenberg's discharge was not improper or inequitable. (*Id.* at 21.) Greenberg was informed of this decision by letter on November 16, 1983, and was sent a copy of the Record of Review of Discharge, which includes his service records. (*Id.* at 15-22.)

Greenberg next applied to the BCNR, on October 16, 1984, for an upgrade of his discharge. (D.I. 18 at 56.) He was again represented by AmVets, and again, he alleged only that he should have been discharged because of his medical and psychiatric problems as unsuitable for continued service. (*Id.* at 56-60.) After considering Greenberg's "application, all material in support thereof, and [his] naval records," the BCNR determined that Greenberg's Other Than Honorable discharge was "neither erroneous nor unjust." (*Id.* at 10.) Greenberg was informed of this decision on February 15, 1985 by a letter from BCNR. (*Id.* at 10-11.) In the letter from the BCNR, Greenberg was informed that it found, among other things, that "after consulting with

qualified lawyer counsel, [he] elected to waive [his] right to have [his] case heard be an administrative discharge board." (*Id.* at 10.)

    C.    <u>Second Effort to Upgrade the Discharge</u>

On June 27, 2003, Greenberg requested that the BCNR review its decision from 1985, in which it refused to change his discharge from Other Than Honorable. (D.I. 18 at 24.) In this request, for the first time, Greenberg alleged that he was not given a discharge review hearing and never signed a waiver of appearance. (*Id.*) He alleged that he was not aware until 2003 that there was a notation in his service record that said he had waived his right to a hearing. (*Id.*)

The BCNR reviewed all of the records from the 1983 NDRB review and the 1985 BCNR review. (D.I. 18 at 1-4.) Additionally, the BCNR considered the affidavit of Charles Silkett ("Silkett", the "Silkett Affidavit"), the recorder for the 1983 NDRB. (*Id.* at 8.) Silkett states that he does not remember Greenberg's specific case, but that he would have prepared the summary of service that shows that Greenberg waived his right to a hearing before the ADB. (*Id.*) Silkett further claims that, although there is no record of the waiver in Greenberg's file, that he "never would have made the entries on the summary of service unless those entries were substantiated by documentation in the service record as it existed at that time." (*Id.* at 8.) Silkett went on to speculate that Greenberg's waiver was erroneously left out when the records were transferred to microfiche. (*Id.* at 8-9.) The Silkett affidavit was sent to Greenberg's attorney, whose response to the affidavit was considered by the BCNR and included in the record. (*Id.* at 277.)

5

The BCNR issued its decision on May 20, 2004, finding that "the evidence submitted was insufficient to establish the existence of probable material error or injustice," and thereby denying Greenberg's request to upgrade his discharge from Other Than Honorable. (D.I. 18 at 1.) In its decision, the BCNR rejected Greenberg's argument that he had never signed a waiver, relying on: (1) its conclusion that Silkett was unlikely to have noted a waiver on the summary of service if one did not exist, (2) its finding that the separation authority would not have directed discharge unless an ADB was held or a waiver was signed, and (3) the separation code on Greenberg's discharge papers, which indicated that Greenberg was separated without an ADB. (*Id.* at 3.) Additionally, the BCNR rejected Greenberg's contention that he should have been discharged because he was not physically qualified, rather than for misconduct. (*Id.*) The BCNR found that when an individual is being considered for separation both for misconduct and for lack of physical qualification, separations for misconduct normally take precedence. (*Id.*) It therefore denied Greenberg's request to upgrade his discharge. (*Id.* at 1-4.)

### III.  STANDARD OF REVIEW

A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). "Facts that could alter the outcome are 'material,'

and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## IV. DISCUSSION

### A. Summary Judgment on Counts I and II

In Counts I and II of his Complaint, Greenberg challenges the BCNR's decision not to upgrade his discharge from Other Than Honorable. (D.I. 1 at 14-15.) In reviewing a decision of the BCNR, the "district court is to set aside the BCNR action if it finds it to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Dougherty v. U.S. Navy Bd. for Correction of Naval Records*, 784 F.2d 499, 501 (3d Cir. 1986) (*quoting* 5 U.S.C. § 706 (1977)). In this review, the court is "generally limited to consideration of the administrative record." *Dougherty*, 784 F.2d at 501. The court must make a "searching and careful" inquiry, but "the ultimate standard of review is a narrow one," as "[t]he court is not empowered to substitute its

judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

The determination of whether an agency decision was arbitrary and capricious involves determining "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Volpe*, 401 U.S. at 416. To prove arbitrary and capricious behavior, the party challenging an agency decision must show "cogent and clearly convincing evidence" sufficient to "overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith." *Smith v. Dalton*, 927 F.Supp. 1, 4 (D.D.C.,1996) (citations and internal quotations omitted). An agency decision is arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). When reviewing a decision by military personnel, the court applies "an unusually deferential application of the 'arbitrary or capricious' standard." *Kreis v. Secretary of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989).

The BCNR's decision not to upgrade Greenberg's discharge was not arbitrary and capricious. In determining whether to change the status of Greenberg's discharge, the BCNR considered all of the information submitted by Greenberg, including Greenberg's affidavit that he never signed a waiver of his right to an ADB, as well as

Greenberg's naval record, the Silkett Affidavit, and "applicable statutes, regulations and policies." (D.I. 18 at 1.) The BCNR found that, as Silkett stated in his affidavit, it was unlikely that Silkett would have noted in the summary of service that a waiver had been filed if there was no waiver at the time of the entry. (*Id.* at 3.) Additionally, the BCNR noted that the separation code used on Greenberg's discharge papers reflected that he had waived his right to an ADB. (*Id.*) Based on this evidence, the BCNR concluded that Greenberg filed a waiver of his right to be heard before the ADB. (*Id.*) This decision was based on consideration of the relevant evidence, and was neither arbitrary nor capricious.

Additionally, the BCNR noted that separation for misconduct normally takes precedence over a separation for physical disability.[5] (D.I. 18 at 3.) Finally, the BCNR declined to change Greenberg's discharge from Other Than Honorable to Honorable based on the mitigating factors presented by Greenberg. The BCNR found that Greenberg's medical and psychological problems at the time of his discharge, as well as his "good post service conduct" were not enough to warrant upgrade of his discharge because of the severity of the drug misconduct charge against Greenberg. (*Id.* at 2-3.)

---

[5] Secretary of the Navy Instruction 1850.4, § 0229, provides that "when a medical board report has been prepared, and the member is pending discharge proceedings by reason of misconduct of disciplinary proceedings which could result in punitive discharge or dismissal," the report should be submitted to the Chief Officer of the appropriate service, but that officer "will take no action in the report pending completion of the disciplinary action."

Because the BCNR considered all of the relevant facts, and there has been no clear error of judgment, summary judgment is granted to the Secretary on Counts I and II.[6]

B. Summary Judgment on Count III

Defendants have also moved for summary judgment on Count III of the Complaint, which alleges violations of the Privacy Act. Defendants claim that the two-year statute of limitations associated with the Privacy Act bars Greenberg's complaint. (D.I. 17 at 19-20.) Greenberg argues that he is within the statute of limitations, as he argues that it did not begin to run until February 2003 when his records were located by a special records researcher.[7] (D.I. 21 at 12; D.I. 18 at 288.) A cause of action under the Privacy Act accrues, and therefore the statute of limitations begins to run, when the prospective plaintiff knew or had reason to know of the adverse action against him. *See Tijerna v. Walters*, 821 F.2d 789, 797 (D.C. Cir. 1987). Therefore, the statute of limitations on Greenberg's Privacy Act cause of action began to run as soon as he knew or had reason to know of the alleged error in his file that stated that he had

---

[6] Having concluded that the law does not support Mr. Greenberg's efforts to upgrade the classification of his discharge does not, of course, reflect any disrespect for his good works since his difficulties in the Navy almost a quarter-century ago. He has submitted evidence demonstrating that his life since that time has been both law-abiding and dedicated to worthy and commendable purposes. Regardless of the outcome of this litigation, Mr. Greenberg should recognize, as others no doubt do, that his character is better judged by the record of a lifetime than by an archived record at the Pentagon.

[7] Greenberg also argues that the statute of limitations could not begin to run until he requested correction of his records under the Privacy Act. (D.I. 21 at 13.) He claims that because the BCNR did not specifically deny his Privacy Act claim until July of 2003, that his Privacy Act cause of action did not accrue until then, and that this is when the statute of limitations began to run. (D.I. 21 at 13.) If this argument were to be accepted, the statute of limitations would essentially have no effect, as the statute of limitations would be triggered only by the bringing of a Privacy Act claim.

waived a hearing before the ADB. It is undisputed that on February 15, 1985, the BCNR sent a letter to Greenberg informing him of its decision, and directly telling him the following: "[a]fter consulting with qualified lawyer counsel, you elected to waive your right to have your case heard by an administrative discharge board." (D.I. 1, Exhibit D at 1.) There is nothing in the record before me to suggest that Greenberg did not receive that letter, and, in fact, Greenberg actually presents the February 15, 1985 letter as an exhibit to his complaint. (D.I. 1, Exhibit D at 1-2.) Even viewing the facts in the light most favorable to Greenberg, this letter was sufficient to put Greenberg on notice that his record reflected that he had waived his right to an ADB. (*Id.* at 1-2.) Therefore, the statute of limitations on Greenberg's Privacy Act cause of action ran in February of 1987. Summary judgment is therefore granted to the Secretary as to Count III of the complaint.

## V.   CONCLUSION

Accordingly, the Secretary's motion for summary judgment on Counts I, II and III of the Complaint (D.I. 15 and 16) will be granted, and Greenberg's motion for summary judgment (D.I. 20) will be denied. An appropriate order will follow.